IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TERRY CLOTZ, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-02059-PAB |
| Plaintiff, | |
| | JUDGE PAMELA A. BARKER |
| -vs- | |
| MOBILEHELP, LLC, a Florida company, | |
| | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

This matter is before the Court on Defendant MobileHelp, LLC's ("MobileHelp") Motion to Dismiss Complaint and to Compel Arbitration (Doc. No. 11), to which Plaintiff Terry Clotz ("Mr. Clotz") filed a Brief in Opposition (Doc. No. 12), MobileHelp filed a Reply in Support (Doc. No. 15), and Mr. Clotz filed a Surreply (Doc. No. 18).

For the following reasons, the Court defers ruling on MobileHelp's Motion until the completion of an evidentiary hearing set for 9 a.m. on August 4, 2023.

I. **Background**

a. **Mr. Clotz's Complaint**

On November 15, 2022, Mr. Clotz filed a class action Complaint against MobileHelp that alleged a single violation of 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"). (Doc. No. 1.) In the Complaint, Mr. Clotz asserts that he registered his residential phone number with the National Do Not Call Registry on January 27, 2018. (*Id.* at ¶ 14). Yet, on July 18, 2022, he received a pre-recorded call from MobileHelp. (*Id.* at ¶ 15.) Mr. Clotz brought his action under Federal Rules of Civil Procedure 23(b)(2) and (3), and he seeks certification of a class of all persons

in the United States who received a similar pre-recorded call from MobileHelp in the last four years. (*Id.* at ¶ 24.)

### b. MobileHelp's Motion to Dismiss and to Compel Arbitration

On January 6, 2023, MobileHelp filed the instant Motion to Dismiss Complaint and to Compel Arbitration. (Doc. No. 11.) MobileHelp asserts that Mr. Clotz visited two websites where he consented to being contacted by MobileHelp (and others) via pre-recorded phone calls. (Doc. No. 11 at pp. 2, 3.) MobileHelp also asserts that Mr. Clotz agreed on those sites to arbitrate the present case. (*Id.*) In support of these assertions, MobileHelp appended the Declaration of Joseph Barreca [1] and the Declaration of Troy Oldroyd.[2] (*See* J. Barreca Decl. (Doc. No. 11-5); T. Oldroyd Decl. (Doc. No. 11-4).)

Mr. Barreca avers that on February 5, 2021, Mr. Clotz visited www.unclaimed-moneysearch.com. (Barreca Decl. at ¶¶ 6, 7.) According to Mr. Barreca, Mr. Clotz entered his name and phone number on the site and checked a box that indicated, "By checking this box I agree to the Privacy Policy, Terms & Conditions, and to receive relevant, daily email from UnclaimedMoneySearch and Fortifynance." (*Id.* at ¶ 9.) Above the check box was a disclaimer that provided in relevant part:

> By checking the box below I consent to be contacted by telephone by any of our Marketing Partners, which may include artificial or pre-recorded calls and or text messages, delivered via automated technology to the phone number(s) that I have provided above including wireless numbers even if I am on a federal or state do not

---

[1] Joseph Barreca is the president of Shift44, the company that owns and operates the website www.unclaimed-moneysearch.com. (Barreca Decl. at ¶¶ 4,6.)
[2] Troy Oldroyd is a director of product development for Digital Media Solutions, which owns and operates money.advanceplatinum.com. (Oldroyd Decl. at ¶¶ 3, 5.)

call registry, if applicable regarding financial, senior, energy, medicare, home, travel, health, and insurance products and services.

(*Id.*) MobileHelp was listed as one of the "Marketing Partners." (*Id.* at ¶ 8.). Near the check box was a link to the "Terms & Conditions." (*Id.*) Clicking on that link would have opened another tab or window with those terms and conditions. (*Id.* at ¶ 10.) The terms and conditions include the following paragraph:

> GOVERNING LAW; DISPUTE RESOLUTION
> You agree that the Terms of Use will be governed by and construed in accordance with the laws of Texas, without regard to conflicts of law principles, and that any disputes under this Agreement will be submitted to binding arbitration under the Rules of Arbitration for the American Arbitration Association in Tarrant, Texas.

(*Id.* at ¶ 9, Ex. A.)

According to Mr. Oldroyd, on July 15, 2021, Mr. Clotz visited another website named money.advanceplatinum.com. (Oldroyd Decl. at ¶ 7.) Mr. Oldroyd claims that Mr. Clotz entered his name, zip code, email, phone number, and date of birth. (*Id.* at ¶ 10.) Mr. Clotz purportedly clicked a box marked "Get Approved!" with a disclaimer that provided, "By checking this box, I agree to: Privacy Policy and Terms of Service from Advance Platinum and CreditCardCommittee." (*Id.* at ¶ 8.) Near this box was a similar link that would take the user to this site's terms and conditions, which had an identical governing law and arbitration provision as www.unclaimed-moneysearch.com. (*Id.* at ¶ 9.)

On February 2, 2023, Mr. Clotz filed an Opposition to MobileHelp's Motion to Dismiss Complaint and to Compel Arbitration. (Doc. No. 12.) Mr. Clotz attached a document titled "Affidavit of Terry Clotz" to his Opposition. (*See* T. Clotz 1st Affidavit (Doc. No. 12-1).) Mr. Clotz's purported affidavit was not notarized and did not include all the language for an unsworn declaration as required by 28 U.S.C. § 1746. (*Id.*) On February 24, 2023, MobileHelp filed a Reply in support of its Motion,

3

challenging, in part, the validity of Mr. Clotz's affidavit. (Doc. No. 15, pp. 2, 3.) On April 26, 2023, the Court issued an Order permitting Mr. Clotz to file a surreply limited to addressing the validity of his purported affidavit. (Doc. No. 17.) On May 3, 2023, Mr. Clotz filed a surreply with a second, notarized affidavit attached. (*See* Doc. No. 18; T. Clotz 2nd Affidavit (Doc. No. 18-1).) In the second affidavit, Mr. Clotz avers that he never visited the websites www.unclaimed-moneysearch.com and money.advanceplatinum.com. (Clotz 2nd Aff. at ¶¶ 4, 9.)

## II. Law and Analysis

MobileHelp motions this Court to compel arbitration and to dismiss this case under § 4 of the Federal Arbitration Act ("FAA"). (Doc. No. 11 at p. 1.) It argues that Mr. Clotz visited www.unclaimed-moneysearch.com and money.advanceplatinum.com and entered into two identical and valid arbitration agreements. (*Id.* at pp. 2-3.) MobileHelp contends that it is a named third-party beneficiary of those arbitration agreements. (*Id.* at p. 12.) And, finally, it asserts that Mr. Clotz's present TCPA claim falls within the scope of the arbitration agreements. (*Id.* at p. 13.) In the alternative, MobileHelp asks this Court to compel arbitration and to stay the proceedings under § 3 of the FAA. (*Id.* at p. 14.)

In his Brief in Opposition, Mr. Clotz argues that this Court cannot compel arbitration because the Parties never agreed to arbitrate. (Doc. No. 12 at p. 5.) In both his first and second affidavits, Mr. Clotz denies ever visiting the two websites in question. (Clotz 1st Aff. at ¶¶ 4, 9.) (Clotz 2nd Aff. at ¶¶ 4, 9.) Because of this denial, he argues that the formation of the arbitration agreement is "in issue." (Doc. No. 12 at p. 5.) As such, he contends that the Court should either deny MobileHelp's motion or grant him leave to conduct limited discovery under Federal Rule of Civil Procedure 56(d). (*Id.* at pp. 5-6.)

In its Reply, MobileHelp argues that Mr. Clotz's first affidavit is invalid. (Doc. No. 15 at pp. 3-4.) And even if the Court finds the affidavit valid, MobileHelp contends that the affidavit "fails to put the formation of an arbitration agreement in issue." (*Id.* at p. 6.) Finally, MobileHelp argues that it is a third-party beneficiary of the arbitration agreement whether the Court applies Texas or Ohio law. (*Id.* at pp. 7-9.)

In his Surreply, Mr. Clotz attached a second affidavit. (*See* Clotz 2nd Aff.) But he also argues that his first affidavit was valid. (Doc. No. 18 at pp. 1-2.) The Court disagrees. Mr. Clotz's first affidavit did not qualify as an affidavit as it was not sworn before a notary public. *See Sfakianos v. Shelby Cty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (citation omitted) ("an affidavit is a 'sworn statement in writing made . . . under an oath or affirmation before . . . an authorized officer'"). And it did not qualify as an unsworn declaration under 28 U.S.C. § 1746(2) because it was missing words to the effect that "the foregoing is true and correct." *See Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998) (recognizing that an unsworn declaration under 28 U.S.C. § 1746(2) can substitute for a conventional affidavit if the statement "is made under penalty of perjury, certified as true and correct, dated, and signed").

The Court finds, however, that Mr. Clotz's second affidavit is valid. The second affidavit is identical to the first except that it adds the statement "the foregoing is true and correct," and it is notarized. (*See* Clotz 2nd Aff.) Therefore, the second affidavit qualifies both as a conventional affidavit and as an unsworn declaration under 28 U.S.C. § 1746(2).

Section 4 of the Federal Arbitration Act provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the

>parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  Section 4 also provides, however, that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  (*Id.*)

The standards of Federal Rule of Civil Procedure 56 "govern whether a court should hold a trial under § 4 when a party alleges that no contract exists."  *Boykin v. Family Dollar Stores of Mich.*, LLC, 3 F.4th 832, 836 (6th Cir. 2021), *see also* Fed. R. Civ. P. 81(a)(6)(B).  Because MobileHelp is the party asserting the arbitration agreement's existence, under Rule 56 it has the initial burden "to produce evidence that would allow a reasonable jury to find that a contract exists."  *Chaudhri v. StockX, LLC (In re StockX Customer Data Sec. Breach Litig.)*, 19 F.4th 873, 881 (6th Cir. 2021).  To determine whether a contract exists, a court "appl[ies] ordinary state-law principles that govern the formation of contracts."  (*Id.*) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 940, (1995)).

However, the parties disagree over which state's law applies.  MobileHelp argues that the Court should apply Texas law to determine whether a contract exists as the arbitration agreement states that the terms and conditions "will be governed by and construed in accordance with the laws of Texas."  (Doc. No. 11 at p. 6.)  Mr. Clotz responds that the Court should disregard the choice of law provision and apply Ohio contract law because he never agreed to the contract in the first place.  (Doc. No. 12 at p. 4.)  Neither party identifies whether there would be a different result were this Court to apply Ohio law or Texas law.

Before "undertaking a choice-of-law analysis, 'an actual conflict between Ohio law and the law of another jurisdiction must exist[.]'"  *Troy Stacy Enter. v. Cincinnati Ins. Co.*, 2022 U.S. App.

6

LEXIS 15881 at *6 (6th Cir. June 8, 2022) (quoting *Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 677 (S.D. Ohio 2019)).

The contract in this case is known as a "clickwrap" agreement as it "require[s] the user to manifest assent to the terms by clicking on an icon." *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013). Here, Mr. Clotz purportedly checked a box on both websites indicating he agreed to the site's terms and conditions, which included the arbitration agreement. (Barreca Decl. at ¶ 8.) (Oldroyd Decl. at ¶ 8.) "Ohio courts have held that clicking a 'clickwrap agreement' is an acceptable method to manifest assent to the terms of an agreement." *Campinha-Bacote v. AT&T Corp.*, 10th Dist. Franklin No. 16AP-889, 2017-Ohio-5608, ¶ 13; *see also Tucker v. Santa Barbara Tax Prods. Grp., LLC*, 2023 U.S. Dist. LEXIS 61353 at *10 (N.D. Ohio Apr. 5, 2023) (collecting cases). This is true even where, as here, the "disputed terms [are] contained in a hyperlink." *Campinha-Bacota*, 2017-Ohio-5608 at ¶ 13 (citing *Ranazzi v. Amazon.com, Inc.*, 2015-Ohio-4411, 46 N.E.3d 213, ¶ 13 (6th Dist.)).

Texas courts also recognize the validity of clickwrap agreements. *See, e.g., Johnson v. Sw. Recovery Servs. Inc.*, 2023 U.S. Dist. LEXIS 23784 at *17 (N.D. Tex. Jan. 23, 2023) (collecting cases). Additionally, Texas courts recognize the validity of such agreements even in circumstances where the user must click a hyperlink to open the terms and conditions. *See Jia v. Nerium Int'l LLC*, 2018 U.S. Dist. LEXIS 160090 at *10 (N.D. Tex. Sep. 18, 2018).

The declarations of Mr. Barreca and Mr. Oldroyd establish that a user purporting to be Mr. Clotz accessed both the subject websites, entered Mr. Clotz's personal information on the sites, and clicked buttons to indicate assent to each site's terms and conditions, which contained the arbitration agreement. (Barreca Decl. at ¶¶ 7, 8, 11.) (Oldroyd Decl. at ¶¶ 7, 8, 10.) Accordingly, the Court

concludes that, whether it applies Ohio or Texas law, MobileHelp has met its initial burden of producing evidence that a contract exists.

Regarding whether MobileHelp is an intended third-party beneficiary of these contracts, both Ohio and Texas apply similar "intent to benefit" tests. Under Ohio's analysis:

> [I]f the promisee . . . intends that a third party should benefit from the contract, then that party is an "intended beneficiary" who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract.

*Hill v. Sonitrol of Sw. Ohio*, 36 Ohio St. 3d 36, 40, 521 N.E.2d 780 (1988) (citing *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980)). To determine the parties' intent, Ohio courts first look to the language of the agreement. *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 856 (6th Cir. 2020) (citing *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12). The Texas Supreme Court's test is indistinguishable:

> Texas law recognizes that third parties have standing to recover under a contract that is clearly intended for their direct benefit. In determining whether there is intent to benefit a third party, we look to the entire agreement, giving effect to all its provisions. The contract need not have been executed solely to benefit the noncontracting party. We do not create a third-party benefit by implication; the presumption is the parties contracted only for themselves, absent a clear showing of intent otherwise. However, the agreement need not state "third-party beneficiary" or any similar magic words. Finally, a third party cannot enforce a contract if the third party benefits only incidentally from it.

*City of Hous. v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (internal citations omitted); *see also Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 635 (Tex. 2018) (applying same test to third-party beneficiary of arbitration agreement).

The Court concludes that whether it applies Ohio or Texas law, MobileHelp has met its initial burden of producing evidence that it is a third-party beneficiary because the contracts explicitly listed

MobileHelp as a "Marketing Partner" and intended beneficiary of the contracts. (Barreca Decl. at ¶ 8.)

The burden now shifts to Mr. Clotz "to present 'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that he did not" agree to the arbitration agreements. *Boykin*, 3 F.4th at 839. Mr. Clotz attempts to do this through his affidavit.

In his affidavit, Mr. Clotz denies ever visiting the two websites in question. (Clotz 2nd Aff. at ¶¶ 4, 9.) While a "convenient memory lapse" does not create a factual dispute, an "unequivocal denial" can. *Boykin*, 3 F.4th at 839-40 (citations omitted). "So a party might be able to obtain a trial under § 4 with a sworn denial that the party ever signed an arbitration agreement or received arbitration materials." *Id.* at 840 (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161-62 (3d Cir. 2009)).

This is what Mr. Clotz's affidavit accomplishes. By denying that he ever visited the websites at all, he is, in effect, "flatly den[ying]" that he ever clicked the boxes and assented to the terms and conditions. *Id.* (flat denials create "a factual dispute" over whether the plaintiff "authorized the arbitration contract"). He is also, in effect, flatly denying that he clicked the hyperlinks on the websites that would have taken him to the terms and conditions that contained the arbitration clause. *Id.* (flat denials likewise create a "factual dispute" over whether the plaintiff "learned of [the defendant's] arbitration policy in other ways").

The Court disagrees with MobileHelp that *Boykin*, 3 F.4th 832, and *StockX*, 19 F.4th 873, support its argument that Mr. Clotz has failed to put the contract "in issue." (Doc. No. 15 at p. 6.) *Boykin* was a "close" case because the plaintiff first testified that "he does not 'have knowledge or recollection' of accepting the arbitration contract" but later claimed that he "unequivocally did not

9

consent to, sign, acknowledge or authorize any type of arbitration agreement." *Boykin*, 3 F.4th at 840. Mr. Clotz has no similar equivocations. He states, under penalty of perjury, that he never visited the websites, full stop. Mr. Clotz's assertion that he never visited these websites is analogous to the plaintiff's flat denial in *Boykin*. *StockX* is also unhelpful for MobileHelp because, in that case, the plaintiffs did not submit any affidavits or any evidence at all to show a genuine dispute of material fact about the formation of the arbitration agreement. *StockX*, 19 F.4th at 882. Rather, the plaintiffs only offered a "conclusory assertion" in their brief in opposition to the defendant's motion to dismiss and to compel arbitration. *Id.* Here, Mr. Clotz has offered actual evidence in the form of his affidavit.

In short, the Court finds that Mr. Clotz has put the formation of the contract "in issue," which "entitles him to targeted discovery and a trial on the question." *Boykin*, 3 F.4th at 841.

## III. Conclusion

For the reasons set forth above, the Court defers ruling on MobileHelp's Motion to Dismiss Complaint and to Compel Arbitration (Doc. No. 11) until the completion of an evidentiary hearing set for 9 a.m. on August 4, 2023, in Courtroom 16A of the United States District Court for the Northern District of Ohio, located at Carl B. Stokes U.S. Court House, 801 West Superior Avenue, Cleveland, Ohio 44113. Before the evidentiary hearing, the parties may conduct limited discovery that is narrowly tailored to the question of whether Mr. Clotz assented to the at-issue clickwrap agreements found on www.unclaimed-moneysearch.com and money.advancedplatinum.com. All discovery shall be completed by July 7, 2023.

**IT IS SO ORDERED.**

Date: May 8, 2023

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE